AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
District of New Mexico

FILED
UNITED STATES DISTRICT COURT
LAS CRUCES, NEW MEXICO

JUL - 3 2024

MITCHELL R. ELFERS
CLERK OF COURT

| In the Matter of the Search of | ) |
|---|---|
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) |
| A blue Apple iPhone belonging to Gerardo Carrillo, currently located at 2290 E Griggs Ave. Las Cruces, NM | ) ) ) |

Case No. 24MR1243

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See attachment A, which is attached hereto and fully incorporated herein by reference.

located in the _____ District of ____New Mexico____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, which is attached hereto and fully incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. 841(a)(1) | Possession with Intent to Distribute a Controlled Substance |
| 21 U.S.C. 846 | Conspiracy to Distribute a Controlled Substance |

The application is based on these facts:

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
Applicant's signature

Chandler Rule, DEA Special Agent
Printed name and title

Electronically submitted and telephonically sworn.

Date: July 3, 2024

_____
Judge's signature

City and state: Las Cruces, New Mexico

Gregory B. Wormuth, United States Magistrate Judge
Printed name and title

## ATTACHMENT A

## PROPERTY TO BE SEARCHED

The affidavit, *see* **Attachment C**, is submitted in support of a warrant to search and seize information, more fully described in **Attachment B**, contained in the following electronic devices referred to in **Attachment B** and **Attachment C** as Subject Telephone to include any SIM card found in or with the Subject Telephone. This warrant authorizes the forensic examination of the entire devices for the purpose of identifying the electronically stored information described in Attachment B.

### Subject Telephone

Subject Telephone is a blue Apple iPhone belonging to Gerardo Carrillo (hereinafter Carrillo), that was seized on June 27, 2024, from Carrillo who had been arrested on June 27, 2024. Subject Telephone has an unknown telephone number. Subject Telephone is currently in the custody of DEA Las Cruces and is depicted below.

 

1

## ATTACHMENT B

## PARTICULAR THINGS TO BE SEIZED/INFORMATION TO BE RETRIEVED

The particular things to be seized include all records, in whatever format, stored on Subject Telephone described in Attachment A that are evidence of violations of 21 U.S.C. §§ 841 and 846, possession with intent to distribute a controlled substance and conspiracy, by Gerardo Carrillo, including:

1. Digital, cellular, direct connect, and/or other phone numbers, names, addresses, and other identifying information of customers, distributors, sources of supply and other associates of the user of the Subject Telephone;

2. Digital, cellular, direct connect, and/or other phone numbers dialed from, which contacted, or which are otherwise stored on, the Subject Telephone, along with the date and time each such communication occurred;

3. Message logs and messages whether sent from, to, or drafted on, the Subject Telephone, along with the date and time each such communication occurred;

4. The content of voice mail messages stored on the Subject Telephone, along with the date and time each such communication occurred;

5. Photographs or video recordings;

6. Information relating to the schedule, whereabouts, or travel of the user of the Subject Telephone;

7. Information relating to other methods of communications utilized by the user of the Subject Telephone and stored on the Subject Telephone;

8. Bank records, checks, credit card bills, account information and other financial records; and

9. Evidence of user attribution showing who used or owned the Subject Telephone, such as logs, phonebooks, saved usernames and passwords, documents, third party applications (including social media), and internet browsing history.

## ATTACHMENT C

## AFFIDAVIT IN SUPPORT OF ORDER AUTHORIZING SEARCH WARRANT

I, Chandler Rule, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of the cellphone described in Attachment A, which is currently in law enforcement possession, and the extraction from that cellphone of the electronically stored information described in Attachment B.

## AGENT BACKGROUND

2. I am a Special Agent with the Drug Enforcement Administration (DEA) and have been since December 2021. As a DEA Special Agent, I am empowered by Title 21, Section 878 of the United States Code to effect arrests, searches, and seizures for violations of the federal narcotics laws.

3. Prior to becoming a Special Agent with the DEA, I was employed as a Trooper with the Kansas Highway Patrol from 2016 to 2021. During my career as a law enforcement officer and narcotics agent, I have conducted and assisted with numerous criminal investigations concerning violations of the Controlled Substances Act and have received ongoing training in conducting such investigations.

4. My experience as a narcotics agent includes, but is not limited to, conducting physical surveillance, interviewing witnesses, writing affidavits for and executing search warrants, working with undercover agents and informants, issuance of administrative and federal grand jury subpoenas, analysis of phone toll and financial records, and analysis of data derived from social media networks like Facebook.

5. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show

merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter. I am familiar with the facts and circumstances of this investigation based on my personal participation in the investigation referred to in this affidavit. I have compiled information derived from numerous discussions with experienced law enforcement officers, including Special Agents of the DEA and other law enforcement agencies.

6. I am a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C), that is, a government agent engaged in enforcing the criminal laws and duly authorized by the Attorney General to request a search warrant. Through my training and experience, I know that narcotics traffickers often maintain one or more cellular or smart phones which they utilize to further narcotics trafficking activities. Narcotics traffickers use these devices to communicate operational directives and information concerning the conduct of the organization's illegal activities to other organization members, including their suppliers, distributors, and other co-conspirators. I know, based upon my training and experience, that timely communication of information between organizational members is critical to the overall success of an organization's illegal activities. The critical nature of this information is derived from the necessity of the organization's management to provide instructions for the importation, storage, transportation, and distribution of narcotics, as well as the subsequent laundering of the proceeds of these illegal activities.

7. I also know that some devices utilize subscriber identity module ("SIM") cards. A SIM card is a chip that is used to authenticate a device to a network. The SIM card generally contains subscriber information and authentication information, and it may contain contacts and encryption information. The portability of SIM cards in some devices allows a user to easily change devices, while maintaining the same telephone number, by removing the card from one device and inserting it into another. While SIM cards may have the capability to store some of the evidence described above, the storage capacity of devices tends to far exceed that of SIM cards. Which information is stored on the SIM card, on the device, or in both locations varies and depends on variables such as the user-defined settings

on the device and the memory capacity of the SIM card. Accordingly, information pertaining to narcotics smuggling activity may be located on the SIM card itself, as well as the device in which the SIM card was inserted.

8.  I further know from my training and experience that a cache of information concerning narcotics smuggling activities and revealing the identity of the user of the device can be found on these devices. This information includes dialed, received, or missed calls and messages sent, received, or placed in draft status, which can be found on these devices, including in third-party applications (or "apps") with messaging and audio and video calling features, such as Facebook Messenger, WhatsApp, SnapChat. I know that the identities, telephone numbers, and usernames of other participants involved in the smuggling activity are often maintained in the contact lists of these devices, including in third-party social media and other applications. In my experience, narcotics smugglers also use these devices to take and store photographs or video recordings of themselves with their co-conspirators and with contraband including smuggled narcotics, currency, and firearms. Smugglers also use also use GPS applications (such as Google Maps or Apple Maps), which can reveal their whereabouts when they conducted or arranged smuggling activities or travel, as well as establishing identity of the user of the device based on the locations frequented. In addition, narcotics smugglers can also use these devices to store information related to the financial transactions related to narcotics smuggling and distribution, such as debt ledgers and financial accounts and transactions. In my experience, the devices used by narcotics smugglers often contain evidence relating to their smuggling activities including, but not limited to, contact lists, lists of recent call activity, stored text, chat, and voice mail messages, photographs and video recordings, GPS and location information, and financial accounts and records.

**IDENTIFICATION OF THE DEVICE TO BE EXAMINED**

9.  The property to be searched is a blue iPhone cellphone and any SIM card or other storage media contained therein, hereinafter "the Subject Telephone." The Subject Telephone was seized from Gerardo Carrillo on June 27, 2024. The Subject Telephone is currently stored at Drug Enforcement

Administration (DEA) office located at 2290 E. Griggs Las Cruces, Nm 88001. In my training and experience, I know that the Subject Telephone has been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when the Subject Telephone first came into the possession of DEA.

10. The applied-for warrant would authorize the forensic examination of the Subject Telephone for the purpose of identifying electronically stored data particularly described in Attachment B.

## PROBABLE CAUSE

11. Because this Affidavit is being submitted for the limited purpose of establishing probable cause, I have not included each and every known fact regarding the instant investigation. More specifically, I have set forth only pertinent facts that I believe are necessary to establish probable cause to search the Subject Telephone for evidence of violations of 21 U.S.C. §§ 841(a)(1) and 846. The request to search the Subject Telephone is based on the following:

12. On June 27, 2024, a United States Border Patrol (USBP) agent who was assigned to the primary inspection area of the USBP Interstate 25 Checkpoint near Las Cruces, New Mexico (NM), observed a Maroon Jeep Grand Cherokee bearing a Texas license plate arrive at the checkpoint.

13. As the driver and lone occupant, later identified as Gerardo Carrillo, pulled into the primary inspection area and up to the USBP agent, Carrillo began to roll up his window and drive past the agent. The agent then directed Carrillo to stop the vehicle. At this time Carrillo stopped the vehicle and rolled down his window. The agent asked Carrillo where he was traveling to, which Carrillo responded, "Denver." As the agent looked through the rear windows, he continued to question Carrillo. According to Carrillo, he was going to spend a week in Denver. While looking through the windows of the Jeep, the agent did not observe any luggage and only saw a pair of jeans in the back-cargo area of the Jeep.

14. Furthermore, Carrillo told the agent that the Jeep did not belong to him, however, it did belong to his cousin. While talking to Carrillo, the agent noticed Carrillo displaying nervous behavior and that he seemed anxious to leave.

15. The agent then asked Carrillo if he would consent to a canine inspection of the vehicle. Carrillo agreed, and the agent directed Carrillo to the secondary inspection area.

16. At the secondary inspection area, an agent retrieved his government assigned canine. Again, an agent asked Carrillo for permission to conduct a free air canine sniff of the exterior of the vehicle, to which Carrillo agreed. The agent then deployed his canine to sniff the vehicle. The canine subsequently alerted to a trained odor while sniffing the exterior of the vehicle.

17. Agents then conducted a hand search of the vehicle. During the search, agents discovered six bundles, wrapped in blue tape, hidden in the natural void of the spare tire compartment. The agents field tested the substance in the bundles, which tested positive for cocaine. Agents also located the Subject Telephone inside the vehicle.

18. Drug Enforcement Administration (DEA) Agents responded to the checkpoint for further investigation. At the onset of an interview with Carrillo, Agents asked Carrillo to retrieve his cell phone from his personal belongings, which was removed from the Jeep by USBP Agents. Carrillo then grabbed the Subject Telephone. Carrillo told agents that the Subject Telephone was his only phone.

19. Carrillo was advised of his Miranda rights which he stated he understood, but he was not willing to speak with agents. DEA agents subsequently processed and weighed the cocaine. The six bundles of cocaine weighed approximately 8.0 kilograms.

20. Based on my training and experience, the amount of narcotics found in Carrillo's possession is consistent with drug distribution and not personal use. Based on my training and

experience, I know that it is common for drug traffickers to utilize cellphones to carry out their drug trafficking activities and communicate with couriers, source of supplies, and stash house operators.

21. Based on my training, experience, and research, I know that devices, such as the Subject Telephone, possess capabilities that allow them to serve as a wireless telephone, digital camera, and GPS navigation device. Additionally, the Subject Telephone has both web browsing and Wi-Fi capabilities. In my training and experience, examining data, including location data, stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device as well as when the individual used the device and where they were when they used the device.

22. Based upon the information contained in this Affidavit, there is probable cause to believe that the Subject Telephone contains evidence of violations of 21 U.S.C. §§ 841(a)(1) and 846: Possession with Intent to Distribute Cocaine and Conspiracy to Possess with Intent to Distribute Cocaine.

## ELECTRONIC STORAGE & FORENSIC ANALYSIS

23. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. This information can sometimes be recovered with forensics tools.

24. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Subject Telephone was used, the purpose of its use, who used the Subject Telephone, and when. There is probable cause to believe that this forensic electronic evidence might be on the Subject Telephone because:

   a. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

   b. A person with appropriate familiarity with how an electronic device works and the data generated by such devices may, after examining this forensic evidence in its proper

8

context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

c.  The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a device is evidence may depend on other information stored on the device and the application of knowledge about how a device behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

d.  Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

25.  *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the Subject Telephone consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the Subject Telephone to human inspection in order to determine whether it is evidence described by the warrant.

26.  *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

27.  Based on the above information, there is probable cause to believe that evidence of violations of 21 U.S.C. §§ 841(a)(1) and 846 are located in the Subject Telephone. Therefore, I

9

respectfully request that this Court issue a search warrant for the Subject Telephone, more particularly described Attachment A, authorizing the seizure and examination of the items described in Attachment B.

Dated this 1st day of July, 2024.

_____
Chandler Rule
DEA Special Agent

Telephonically sworn to before me this 3d day of July, 2024.

_____
Gregory B. Wormuth
United States Magistrate Judge